

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VIOLET REALTY, INC., *doing business as*
Main Place Liberty Group,

              Plaintiff,

v.

AFFILIATED FM INSURANCE COMPANY,

              Defendant.
_____

**DECISION AND ORDER**

1:16-CV-00757 EAW

## INTRODUCTION

Plaintiff Violet Realty, Inc. ("Plaintiff") filed this action on September 20, 2016, alleging New York state causes of action for breach of contract, failure to act in good faith, violation of New York insurance law, and deceptive business practices. (Dkt. 1). Defendant Affiliated FM Insurance Company ("Defendant") answered and countersued for breach of contract, fraud, and reimbursement, on November 3, 2016. (Dkt. 9). Plaintiff answered the counterclaims on November 30, 2016. (Dkt. 13).

Presently before the Court is Defendant's motion for judgment on the pleadings[1] regarding Plaintiff's second, third, and fourth causes of action. (Dkt. 23). For the reasons stated below, Defendant's motion is granted.

---

[1] Defendant styled its motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 23). However, because Defendant had answered the complaint prior to filing the instant motion, the Court interprets the motion as one for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), in accordance with *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). (*See* Dkt. 25).

## FACTUAL BACKGROUND[2]

Plaintiff owns a 26-story commercial office tower in downtown Buffalo, New York. (Dkt. 1 at ¶ 6). Pursuant to the terms of a written insurance policy, Defendant provided fire insurance for Plaintiff. (*Id.* at ¶ 7; *see also* Dkt. 6 (showing the policy)). The policy limit for both the office tower and other buildings owned by Plaintiff was $342 million. (Dkt. 1 at ¶ 7). The policy was in effect from September 1, 2014, to September 1, 2015. (*Id.* at ¶¶ 7-8).

On February 20, 2015, the building "suffered a fire that originated on the 15th floor, causing damage to numerous floors of the building." (*Id.* at ¶ 10). Damage was caused by the fire itself, smoke, and water pumped into the building by firefighters in an effort to stem the blaze. (*Id.* at ¶¶ 10-11, 40). The policy requires that, in the event of a fire, Defendant pay "the lesser amount of either: (1) the actual cash value of the property at the time of the loss, or (2) the amount which it would cost to repair or replace the property with the material of like kind and quality within a reasonable time after such loss." (*Id.* at ¶ 9).

On the day of the fire, Defendant sent representatives to observe the damage. (*Id.* at ¶ 14). Thereafter, Plaintiff hired an adjuster and began remediating the damage. (*Id.* at ¶¶ 13-15). In its first estimate, Plaintiff's adjuster estimated the loss to be approximately $2.5 million. (*Id.* at ¶ 18). This early estimate did not include all of the repairs Plaintiff later determined to be necessary. (*Id.*). The most recent damage estimate totaled almost

---

[2] The facts here are as alleged in the complaint.

$6.5 million. (*Id.* at ¶ 20). Defendant has paid approximately $2.2 million for direct losses from the fire. (*Id.* at ¶ 22).

Plaintiff claimed additional business interruption losses totaling over $700,000, for lost rental income; such claims are allowed under the policy. (*Id.* at ¶¶ 24-31). Defendant has not made any payment on Plaintiff's business interruption claim. (*Id.* at ¶ 32).

Plaintiff alleges that Defendant "failed to adequately investigate the scope of the loss," (*id.* at ¶ 33), and that its representatives were "absent from the site for a lengthy and important period of time immediately following the fire." (*Id.* at ¶ 35). Plaintiff complains that Defendant denied payment "for several aspects of [Plaintiff's] remediation efforts," (*id.* at ¶ 37), reasoning that the remediation efforts are unnecessary. (*Id.* at ¶ 39). Plaintiff points to Defendant's refusal to pay remediation of smoke or water damage beyond the cost of cleaning the affected areas. (*Id.* at ¶¶ 40-41).

Plaintiff further complains that Defendant refuses to sufficiently cover remediation of the exterior of the building. (*Id.* at ¶¶ 42-43). The building's exterior has the "unique wearing effect of a half century of exposure to the elements," and new material is not of "like kind and quality." (*Id.* at ¶ 42). The fire caused damage to certain parts of the exterior, and no new materials can be made to match the old ones that remain in place. (*Id.*). Plaintiff proposed cleaning all of the panels on the building and then adding the new materials. (*Id.* at ¶ 43). This procedure would be cheaper than fully replacing the

entire outer structure of the building to make the panels uniform. (*See id.* at ¶¶ 42-43). Defendant refused to pay for the cleaning. (*Id.* at ¶ 43).

Plaintiff asserts four causes of action: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of New York Insurance Law § 2601; and (4) deceptive business practices in violation of New York General Business Law § 349. (*Id.* at ¶¶ 52-78).

## DISCUSSION

### I. Standard of Review

Judgment on the pleadings may be granted under Fed. R. Civ. P. 12(c) "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). In considering a motion directed to the sufficiency of the pleadings, a court generally may consider only "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the

motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

## II. Plaintiff's Good Faith Claim is Duplicative of the Breach of Contract Claim

Defendant argues that Plaintiff's second claim must be dismissed because the breach of the covenant of good faith and fair dealing claim is duplicative of Plaintiff's breach of contract claim. (Dkt. 23-1 at 6-7).

"Under New York law, a covenant of good faith and fair dealing is implied in all contracts." *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011). This implied covenant "'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"

*Id.* (quoting *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)). In other words, the covenant of good faith and fair dealing "'is breached when a party acts in a manner that, *although not expressly forbidden by any contractual provision*, would deprive the other party of the right to receive the benefits under the agreement.'" *Williamson Acquisition, Inc. v. PNC Equity Mgmt. Corp.*, Nos. 03-CV-6666T, 04-CV-6259T, 2010 WL 276199, at *7 (W.D.N.Y. Jan. 15, 2010) (quoting *Skillgames LLC v. Brody*, 1 A.D.3d 247, 252 (1st Dep't 2003) (emphasis added), *aff'd sub nom. Argilus, LLC v. PNC Fin. Servs. Grp., Inc.*, 419 F. App'x 115 (2d Cir. 2011).

Breach of the implied duty of good faith and fair dealing "is merely a breach of the underlying contract." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *see also Fishoff*, 634 F.3d at 653 ("A breach of the duty of good faith and fair dealing is considered a breach of contract."). Therefore, "raising both claims in a single complaint is redundant, and courts confronted with such complaints under New York law regularly dismiss any freestanding claim for breach of the covenant of fair dealing." *Jordan v. Verizon Corp.*, No. 08 Civ. 6414 (GEL), 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008) (citing *Canstar v. J.A. Jones Const. Co.*, 212 A.D.2d 452, 453 (1st Dep't 1995)); *accord Netologic, Inc. v. Goldman Sachs Grp., Inc.*, 110 A.D.3d 433, 434 (1st Dep't 2013) (dismissing implied covenant claim as duplicative of breach of contract claims "since both claims arise from the same facts and seek identical damages for each alleged breach" (internal quotation marks and citation omitted)).

New York law makes clear that Plaintiff cannot maintain both its first and second causes of action simultaneously unless the breach of the covenant of good faith and fair dealing claim is supported by allegations different from those underlying the breach of contract claim. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116(PGG), 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009) ("[A] claim for breach of the implied covenant of good faith can survive a motion to dismiss only if it is based on allegations different from those underlying the accompanying breach of contract claim." (internal quotation marks omitted)). All of Plaintiff's factual allegations undergird both its first and second claim. Plaintiff complains only that Defendant failed to pay for losses covered by the insurance policy that were the result of the February 20, 2015, fire. (*See* Dkt. 1).

Plaintiff relies on *Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187 (2008) to argue that its claim should not be dismissed. The *Bi-Economy Market* court stated that "implicit in contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.'" *Id.* at 194 (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)).

An examination of the facts of *Bi-Economy Market* demonstrates why Plaintiff's reliance is misplaced. In that case, the plaintiff business had a fire insurance policy which covered business interruption. *Bi-Economy Mkt.*, 10 N.Y.3d at 191. After suffering a major fire, the insurer refused to pay the full cost of business interruption for

an extended period of time, thereby causing the plaintiff to go out of business. *Id.* The plaintiff claimed damages for the loss of the business, in addition to those caused by the fire. *Id.*; *see, e.g., id.* at 195 ("[T]he claim is that [the defendant insurance company] failed to promptly adjust and pay the loss, resulting in the collapse of the business."). "[T]he purpose of the contract was not just to receive money, but to receive it promptly so that in the aftermath of a calamitous event, as Bi-Economy experienced here, the business could avoid collapse. . . ." *Id.* at 195. The Court of Appeals held that "[w]hen an insured in such a situation suffers *additional damages* as a result of an insurer's excessive delay or improper denial, the insurance company should stand liable for these damages." *Id.* (emphasis added).

Plaintiff claims that because Defendant has delayed payment, Plaintiff should be able to recover extra-contractual damages under its second cause of action. (Dkt. 26 at 5). However, Plaintiff failed to plead, in a non-conclusory fashion, any additional damages beyond those losses covered by the insurance policy. Plaintiff does not plausibly claim that Defendant's delay in paying Plaintiff's alleged losses has created losses which would not otherwise be remedied by a full payment of Plaintiff's breach of contract claim. As such, the facts here are readily distinguishable from those in *Bi-Economy Market*, and Plaintiff's reliance on that case to save its otherwise duplicative breach of the covenant of good faith and fair dealing claim fails.

Plaintiff's second claim is duplicative of its breach of contract claim, and, as such, must be dismissed, although the dismissal is without prejudice because, at present, the

alleged failure to comply with the covenant of good faith and fair dealing is necessarily encompassed within the breach of contract claim. Moreover, in the event that Plaintiff is able to plausibly allege damages in addition to the contract losses, consistent with *Bi-Market Economy*, then it may be able to pursue a separate cause of action for breach of the covenant of good faith and fair dealing.

### III. New York Insurance Law § 2601 Does Not Provide a Private Right of Action

Next, Defendant argues that New York Insurance Law § 2601 does not provide a private right of action. (Dkt. 23-1 at 7). The Court agrees.

Section 2601 makes it unlawful for an insurer doing business in New York from engaging in "unfair claim settlement practices." N.Y. Ins. Law § 2601. It is well settled that there is no private right of action under § 2601. *N.Y. Univ.*, 87 N.Y.2d at 317-18 ("Insurance Law § 2601 does not give rise to a private cause of action."); *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 614 (1994) ("[T]he law of this State does not currently recognize a private cause of action under Insurance Law § 2601.").

Plaintiff, without citing a single statute or case to support its argument, argues that its § 2601 claim should not be dismissed because it is relevant to its second cause of action. (Dkt. 26 at 9). Relevance is an evidentiary necessity; it does not save an otherwise meritless claim. Because New York law does not allow for a private right of action under § 2601, Plaintiff's third cause of action must be dismissed with prejudice.

## IV. Plaintiff Fails to Adequately Plead a New York General Business Law § 349 Claim

Finally, Defendant argues that because Plaintiff raises no "'public, consumer-oriented concerns,'" it fails to state a claim under New York General Business Law ("GBL") § 349. (Dkt. 23-1 at 8 (citation omitted)).

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. § 349(a). To successfully assert a GBL § 349 claim, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

In contrast to common-law fraud, GBL § 349 "is a creature of statute based on broad consumer-protection concerns. . . ." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (2001) (internal quotations and citation omitted).

> The "consumer-oriented" requirement may be satisfied by showing that the conduct at issue "potentially affect[s] similarly situated consumers." [*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995)]. Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must "demonstrate that the acts or practices have a *broader impact on consumers at large*." [*Id.* at 25]. Accordingly, New York courts have recognized that "[p]rivate contract disputes" between the parties do not "fall within the ambit of the statute." *Id.*

*Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (emphasis added). "[T]o demonstrate the requisite consumer-oriented conduct in a dispute concerning coverage

under an insurance policy, a plaintiff must establish facts showing injury or potential injury to the public. . . ." *Id.* at 65.

In *New York University v. Continental Insurance Co.*, 87 N.Y.2d 308 (1995), the New York Court of Appeals held that § 349 did not apply to "complex insurance coverage and proof of loss in which each side was knowledgeable and received expert representation and advice." *Id.* at 321. The insurance contract there involved $10 million in coverage for commercial crime liability. *Id.* at 314. The contract "was tailored to meet the purchaser's wishes and requirements," and had been purchased through an insurance broker. *Id.* at 321. In finding that § 349 did not apply, the court focused on the fact that the transaction "not the 'modest' type of transaction the statute was primarily intended to reach." *Id.* (citation omitted).

This litigation involves a dispute concerning a private insurance contract. According to the allegations in the complaint, the contract at issue was negotiated by sophisticated parties. In addition to Plaintiff's holdings in Buffalo—including the 26-story tower in which the fire occurred—it also owns property in New York City, Greenwood Village, Colorado, and Huntsville, Alabama. (*See* Dkt. 6 at 5). Plaintiff rents at least some of its space out to others. The policy limit for the contract was $342 million, for which Plaintiff paid a premium of $157,218.00. (*See id.*). Each of these facts suggests the contract at issue is not consumer oriented. *See, e.g., Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) ("[The contract at issue] is in effect a 'single shot transaction' involving complex arrangements,

knowledgeable and experienced parties and large sums of money. The nature of alleged deceptive government practices with respect to such a transaction are different in kind and degree from those that confront the average consumer who requires the protection [GBL § 349]. The only parties truly affected by the alleged misrepresentations in this case are the plaintiff and the defendants.").

At oral argument, Plaintiff argued that *New York University* did not apply because the insurance contract at issue here was not specifically tailored by the parties. (*See* Dkt. 28). Although a factor, nothing in *New York University*, or any other case, suggests that specific tailoring is dispositive in determining whether a § 349 claim lies. Defendant may sell fire-loss policies to other customers using similar policy language, but that alone does not suggest that Defendant's actions are consumer oriented.

Additionally, Plaintiff has failed to allege any act of deception aimed at consumers. Plaintiff alleges that Defendant failed to pay to remedy water damage, resulting in unsafe conditions for Plaintiff's tenants and members of the general public who might visit the tenants. Assuming Plaintiff's allegations to be true, the deception was aimed at Plaintiff. Defendant's purported deceptive practices—refusing to pay damages covered under the contract—were not aimed at the public. Rather, Defendant's actions had, at most, public effects. Plaintiff cites no case which suggests that public effects alone are sufficient to establish a § 349 claim.

At base, Plaintiff claims that Defendant engaged in deceptive business practices in refusing to pay Plaintiff. Because this case consists of a private contract dispute and the

contract at issue is not consumer oriented, Plaintiff has failed to state a claim under GBL § 349. However, because this Court cannot state definitively based on the record before it that Plaintiff could under no circumstances assert a GBL § 349 claim against Defendant, the dismissal is without prejudice.

## **CONCLUSION**

For the forgoing reasons, Defendant's motion (Dkt. 23) is granted.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: August 28, 2017
       Rochester, New York